S. Todd Neal (Bar No. 174827)
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorney for Plaintiff
Advanced Media Networks, LLC

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED MEDIA NETWORKS, LLC, | Case No. **'15CV0143 MMA KSC** |
| Plaintiff, | COMPLAINT |
| v. | (JURY TRIAL DEMANDED) |
| VIASAT, INC., LIVETV, LLC, and JETBLUE AIRLINES CORP., | |
| Defendants. | |

## **COMPLAINT**

Plaintiff Advanced Media Networks, LLC ("AMN") brings this action against defendants ViaSat, Inc. ("ViaSat"), LiveTV, LLC ("LiveTV") and JetBlue Airlines Corp. ("JetBlue") (collectively, "Defendants") and hereby alleges as follows:

### **The Parties**

1.    AMN is a limited liability company organized and existing under the laws of California having a principal place of business at 5900 Wilshire Boulevard, Suite 2600, Los Angeles, California 90036. AMN is a supplier of communication products and services, including portable and wireless videoconferencing and mobile wireless broadband network systems for use at remote locations.

2.    ViaSat is a corporation organized and existing under the laws of Delaware having a principal place of business at 6155 El Camino Real, Carlsbad, California, 92009. Upon information and belief, ViaSat does business in the State of

California and this District, contracts to supply goods or services within the State of California and this District, has continuous and systematic business contacts within the State of California and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District and commits and has committed acts of patent infringement either within the State of California and this District, or outside the State of California and this District with a reasonable expectation that such acts would have consequences within the State of California and this District.

3.    LiveTV is a corporation organized and existing under the laws of Delaware having a principal place of business at 700 S. Babcock Street, Melbourne, FL 32901. Upon information and belief, LiveTV does business in the State of California and this District, contracts to supply goods or services within the State of California and this District, has continuous and systematic business contacts within the State of California and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District and commits and has committed acts of patent infringement either within the State of California and this District, or outside the State of California and this District with a reasonable expectation that such acts would have consequences within the State of California and this District.   Until mid-2014, LiveTV was a wholly owned subsidiary of JetBlue.

4.    JetBlue is a corporation organized and existing under the laws of Delaware having a principal place of business at 27-01 Queens Plaza North, Long Island City, New York 11101. Upon information and belief, JetBlue does business in the State of California and this District, contracts to supply goods or services within the State of California and this District, has continuous and systematic business contacts within the State of California and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District and commits and has committed acts of patent

infringement either within the State of California and this District, or outside the State of California and this District with a reasonable expectation that such acts would have consequences within the State of California and this District.

## Jurisdiction and Venue

5.     This action arises under the Patent Laws of the United States, 35 U.S.C. §1, et seq. This Court accordingly has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2202.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 1400(b), and 1404(a).

## Facts Common to All Counts

### *The Patents-In-Suit*

7.     On September 28, 1999, U.S. Patent No. 5,960,074 (the "'074 Patent"), entitled "Mobile Tele-Computer Network For Motion Picture, Television and Advertising Production," a copy of which is attached hereto as <u>Exhibit A</u>, was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Curtis Clark as inventor.

8.     On September 3, 2002, U.S. Patent No. 6,445,777 (the "'777 Patent," the '074 and '777 Patents being referred to collectively herein as the "Patents-in-Suit"), entitled "Mobile Tele-Computer Network," a copy of which is attached hereto as <u>Exhibit B</u>, was duly and legally issued by the USPTO to Curtis Clark, et al. as inventors.

9.     AMN is the owner by assignment of the Patents-in-Suit.

10.     In addition to being examined by the USPTO before being issued, the Patents-in-Suit have each been reexamined by the USPTO multiple times.  During these reexaminations, initiated at the request of several different parties, the USPTO considered dozens of prior art references it had not previously considered and confirmed the validity of the originals claims (some as amended) as well as many new claims added during the reexaminations.

11.     The '074 Patent was subject to a first reexamination before the USPTO, resulting in the USPTO issuing an Ex Parte Reexamination Certificate on November 22, 2011 confirming original claims 1 through 40 (some as amended) and adding new claims 41 through 127. A copy of this Reexamination Certificate is attached hereto as <u>Exhibit C</u>.  Similarly, the '777 Patent was subject to a first reexamination before the USPTO, resulting in the USPTO issuing an Ex Parte Reexamination Certificate on November 15, 2011 confirming original claims 1 through 28 (some as amended) and adding new claims 29 through 109. A copy of this Reexamination Certificate is attached hereto as <u>Exhibit D</u>.

12.     The Patents-in-Suit underwent a second round of ex parte reexaminations by the USPTO which again resulted in the original claims being confirmed and new claims being added. For the '074 Patent, the USPTO issued an Ex Parte Reexamination Certificate on April 23, 2014 confirming claims 1 through 127 (some as amended) and adding new claims 128 through 147. A copy of this Reexamination Certificate is attached hereto as <u>Exhibit E</u>. For the '777 Patent, the USPTO issued an Ex Parte Reexamination Certificate on April 8, 2014 confirming original claims 1 through 109 (some as amended) and adding new claim 110. A copy of this Reexamination Certificate is attached hereto as <u>Exhibit F</u>.

*Licensing History of the Patents-in-Suit*

13.     The Patents-in-Suit have been licensed to several companies offering products and services providing mobile wireless Internet access, including products and services similar to and operating in the same field of use as those described herein offered by Defendants and covered by the Patents-in-Suit.

14.     On January 11, 2010, AMN commenced an action in the Southern District of New York against Inmarsat Inc., Inmarsat Global Limited, Stratos Mobile Networks, Inc. and Vizada Inc. (Case No. 1:10-cv-00194-KBF) alleging infringement of the '074 and '777 Patents by, among things, the SwiftBroadband in-flight broadband wireless Internet access service and the BGAN portable satellite

access terminals. On July 26, 2012, this case was dismissed with prejudice following settlement and licensing agreements between the parties.

15.     On December 19, 2011, AMN commenced an action in the Central District of California against Gogo LLC ("Gogo") and Aircell Business Aviation Services LLC ("Aircell") (Case No. 2:11-cv-10474-GAF-JCG) alleging infringement of the '074 Patent by broadband products and services installed and operating on aircraft to provide WiFi service to passengers. On April 9, 2012, AMN filed an amended complaint adding defendants Bombardier Aerospace Corporation, Delta Air Lines, Learjet, Inc., NetJets, Inc., United Air Lines Inc., and XOJET, Inc. On August 5, 2013, this case was dismissed with prejudice following a settlement agreement between parties involved in the case.

16.     On December 28, 2012, AMN commenced an action in the Central District of California against Row 44, Inc. and Southwest Airlines Co. (Case No. 2:12-cv-11018-GAF-JCG) alleging infringement of the Patents-in-Suit by broadband products and services installed and operating on commercial aircraft to provide WiFi service to passengers. On August 5, 2014, AMN filed an amended complaint adding defendant Global Eagle Entertainment, Inc. On January 5, 2015 an order of dismissal was entered in this case following a settlement and licensing agreement between parties in the case.

17.     On June 23, 2014, AMN entered into a licensing agreement with Panasonic Avionics Corporation ("PAC"), providing PAC with a non-exclusive license to practice the Patents-in-Suit, without litigation.  On information and belief, PAC is one of the largest providers of mobile wireless network services practicing in the same field of use as Defendants, including but not limited to, automobile, aviation, maritime and rail applications.

*ViaSat's Infringing Mobile Broadband Services and Equipment*

18.     ViaSat is a provider of high-speed mobile broadband services and advanced satellite and wireless networks.

19.   ViaSat produces, uses, and sells a variety of advanced satellite and other wireless communication systems, back-end networking equipment, and mobile terminals and subsystems for use in providing wireless Internet access in vehicles including, but not limited to, aircraft, automobiles, trains and seagoing vessels, and for use on land and vehicles in its tactical SurfBeam systems (collectively, "Mobile Broadband Equipment" or "MBE").

20.   ViaSat and its customers provide wireless broadband Internet access to users using the Mobile Broadband Equipment ("Mobile Broadband Services") in vehicles such as aircraft, automobiles, trains and seagoing vessels and via the tactical SurfBeam systems.

21.   ViaSat's Mobile Broadband Services include ViaSat's Yonder mobile broadband services ("Yonder Services") and Exede services including without limitation the Exede In The Air service ("Exede Services"), each of which is described in greater detail below.

22.   ViaSat's Mobile Broadband Equipment includes antenna systems such as the SurfBeam system which comprise portable ground terminals and antennas for terrestrial and satellite applications, including but not limited to, mobile satellite communication, Ka-band gateways and other multi-band antenna applications.

23.   ViaSat's Mobile Broadband Equipment additionally includes satellites, ground systems and equipment and a ground-based communications network.

24.   At least some of the Mobile Broadband Equipment is specifically designed and/or configured for use in providing wireless Internet access to users in moving vehicles and through tactical systems via the SurfBeam systems.   For example, at least one antenna of the Mobile Broadband Equipment is specifically designed and/or configured for installation on the body of an aircraft to provide satellite constellation connectivity, and to meet aviation standards, requirements, and regulations. Upon information and belief, at least one antenna of the Mobile Broadband Equipment has not been, is not, and cannot be utilized in any other

manner other than providing satellite connectivity between an aircraft and ViaSat's satellite constellation, and has no other substantial, non-infringing use outside of an aircraft.

25. Similarly, the Mobile Broadband Equipment includes cabin wireless access point ("CWAP") devices designed and configured to provide wireless local area network access in aircraft and other vehicles and have no other substantial, non-infringing use. Upon information and belief, the CWAP devices used in aircraft are explicitly designed for placement within an aircraft and to meet aviation standards. Other devices of the Mobile Broadband Equipment are designed for use within the cabin or other compartment of an aircraft and have no other substantial, non-infringing use. Upon information and belief, ViaSat explicitly restricts customers from modifying any component of the Mobile Broadband Equipment without express approval from ViaSat.

26. The Mobile Broadband Equipment and Mobile Broadband Services are used, among other things, to provide wireless Internet access onboard moving vehicles, including but not limited to, aircraft, maritime vessels, automobiles, trucks, buses and trains. Upon information and belief, much of the Mobile Broadband Equipment is specifically designed for use in or with such moving vehicles and is not utilized or marketed for any other purpose.

*ViaSat's Yonder Services and Systems*

27. ViaSat provides wireless broadband Internet access for customers as part of their Yonder Services, using systems including, but not limited to, airborne, maritime and terrestrial mobile satellite systems.

28. Upon information and belief, ViaSat markets the Yonder Services to general aviation customers including privately owned aircraft, maritime customers, and rail customers.

29. ViaSat's Yonder Services provide at least three service plans: the "Yonder Plan", the "Yonder Premium" Plan, and "Yonder VIP" Plan.

30.   The Yonder Plan allows for download speeds of 1.5 Mbps and upload speeds of 128 kbps and facilitates applications, including but not limited to, Web, VPN, e-mail (with attachments), and Voice over IP telephone calls (e.g., Skype and Google Hangouts). The Yonder Premium Plan allows for download speeds of 2 Mbps and upload speeds of 512 kbps and facilitates applications, including but not limited to, Web, VPN, e-mail (with attachments), Voice over IP telephone calls (e.g., Skype and Google Hangouts), and streaming music and videos. The Yonder VIP Plan allows for download speeds of 4 Mbps and upload speeds of 1 Mbps and facilitates applications, including but not limited to, Web, VPN, e-mail with attachments, VoIP and video calls (Skype, Google Hangouts), and streaming music and videos.

31.   Upon information and belief, the Mobile Broadband Equipment supporting the Yonder Services includes satellite terminals and subsystems, satellites, ground-based networking equipment, and a ground network (the "Yonder System").

32.   Upon information and belief, the Yonder System includes a satellite antenna assembly, a high power transceiver, an antenna control unit, and a modem/router.

33.   Upon information and belief, the Yonder System is designed and configured to work with CWAP devices. Further, ViaSat advertises the use of the Yonder System with CWAP devices.

34.   Upon information and belief, the server of the Yonder System manages the transfer of broadband information between installed CWAP devices and the ViaSat antenna.

35.   Upon information and belief, the antenna and modem of the Yonder System coordinate data transmissions between aircraft equipped with CWAP devices and the Yonder System to ViaSat satellites orbiting the Earth.

36.   Upon information and belief, ViaSat Ka-band and Ku-band satellites

relay information between the ViaSat modem and multiple gateways located within the Yonder System network.

37.     Upon information and belief, the Yonder System network is designed to transmit data between the Yonder System and the Internet via one or more ViaSat ground-based networking locations.

38.     Additionally, ViaSat makes, uses, sells, and offers for sale Yonder Services and equipment to customers in other industries including maritime, rail, automotive, and trucking.

39.     As part of its maritime offering, ViaSat makes, uses, sells and offers for sale Mobile Broadband Equipment including very-small aperture antennae that are designed to support ViaSat's Yonder Services. The maritime service offers cable modem-like speeds so that customers can connect to a virtual private network to perform tasks, including but not limited to, sending and receiving email with attachments, making VoIP phone calls, browsing the internet, and transferring large files.

40.     Upon information and belief, ViaSat's maritime antennae systems are designed and marketed for use with Wi-Fi access points to provide mobile, maritime Wi-Fi networks.

*ViaSat's Exede Services and Systems*

41.     Upon information and belief, ViaSat's Exede in the Air Service is a high-speed mobile broadband service aimed primarily at, but not limited to, commercial airlines.

42.     The Exede in the Air Service includes Ku-band satellite coverage and Ka-band satellite coverage. Upon information and belief, the Ku-band Exede in the Air Service is utilized by numerous aircraft including over 500 commercial aircraft operated by airlines including JetBlue. The Ka- and Ku-band Exede in the Air Service is in use on over 600 daily commercial airline flights operated by airlines including JetBlue.

43.     The Exede in the Air Service provides an Internet connection with speeds of 12 Mbps or higher to passengers.

44.     Mobile Broadband Equipment supporting the Exede in the Air Service includes satellite terminals and subsystems, satellites, ground-based networking equipment, and a ground network (the "Exede System").

45.     The Exede System includes a satellite antenna, a ViaSat SurfBeam modem, a server, and at least one CWAP device.

46.     The CWAP devices of the Exede System provide a Wi-Fi network to passengers while an aircraft is in motion.

47.     Upon information and belief, the server of the Exede System manages the transfer of broadband information between CWAP devices and the ViaSat antenna.

48.     Upon information and belief, the antenna and modem of the Exede System coordinate data transmissions between the aircraft equipped with the CWAP devices and server to ViaSat satellites orbiting the Earth.

49.     Upon information and belief, ViaSat satellites relay information between the ViaSat modem and multiple gateways located within the Exede System network.

50.     The Exede System network is designed to transmit data between the Exede System and the Internet via one or more ViaSat ground-based networking locations.

51.     Upon information and belief, other Exede Services include ground-based broadband services that provide Internet access instantly, regardless of the local infrastructure or location, and utilize mobile satellite terminals installed on vehicles including but not limited to trains, buses, vans and automobiles.

52.     Upon information and belief, the Mobile Broadband Equipment utilized by the Exede Services includes a satellite antenna, modem, and Wi-Fi access points.

*LiveTV's Infringing Products and Services*

53.    LiveTV offers both "In-Flight Entertainment" products and services, providing multimedia content such as audio and video content, as well as "Connectivity" products and services, which provide wireless broadband Internet connectivity to passengers and crew.

54.    LiveTV's Connectivity products and services include "Ka-Band Broadband," "Multi Band (Ku, Ka and L-band) Broadband," and "OpenPort Aero (L-Band)" products and services (collectively, "Broadband products and services").

55.    Upon information and belief, the Broadband products and services offered by LiveTV utilize ViaSat's Exede Services and Mobile Broadband Equipment manufactured by ViaSat including the Exede System.

56.    Upon information and belief, LiveTV makes, uses, sells, or offers to sell its Broadband products and services to commercial airlines such as JetBlue.

*JetBlue's Infringing Products and Services*

57.    JetBlue offers a mobile broadband service onboard multiple aircraft called "Fly-Fi" that gives passengers Wi-Fi Internet access.

58.    Upon information and belief, JetBlue's Fly Fi products utilize Mobile Broadband Equipment manufactured by ViaSat and sold by LiveTV including the Exede System ("Fly-Fi Equipment").

59.    Upon information and belief, JetBlue's Fly-Fi services include ViaSat's Exede Services sold to JetBlue by LiveTV ("Fly-Fi Services").

60.    JetBlue's Fly-Fi service was designed, developed, and deployed in cooperation with ViaSat and LiveTV.

61.    Upon information and belief, JetBlue's Fly-Fi service was developed and is maintained by LiveTV, as a re-branding of LiveTV's "Ka-Band Broadband" service.

62.    JetBlue offers multiple plans for access to the Fly-Fi service including a free, "Simply Surf" plan and Fly-Fi "Plus" plan for which passengers are charged for

usage.

63.     Fly-Fi Plus is marketed to passengers who utilize bandwidth-heavy applications like streaming movies and applications or activities requiring large downloads, for which passengers are charged increased usage fees.

*Relationships between the Parties*

64.     Based on publicly available information put forth by Defendants, at some time prior to September 22, 2010, ViaSat and JetBlue entered into a memorandum of understanding (the "2010 MOU") for the provision of in-flight broadband access and other services for customers on JetBlue's fleet of more than 160 aircraft using ViaSat advanced Ka-band satellites. Under the 2010 MOU, ViaSat agreed to provide Ka-band antenna components and SurfBeam 2 modems for installation on JetBlue's EMBRAER E190 and Airbus A320 aircraft types along with two-way transmission bandwidth services using satellites owned and/or operated by ViaSat including the WildBlue-1 and high-capacity ViaSat-1 satellites. Also, as part of the 2010 MOU, JetBlue stated that LiveTV, then a wholly owned subsidiary of JetBlue, would install and lead the certification process of the new system.

65.     In a press release dated December 12, 2013 (the "2013 Press Release"), JetBlue announced the launch of "Fly-Fi."

66.     In mid-2014, JetBlue sold LiveTV to Thales SA (also referred to as "Thales Group") for $400 million. As part of this LiveTV sale, JetBlue announced they would enter into long term agreements with LiveTV to continue providing support for its LiveTV and Fly-Fi inflight connectivity products and services.

67.     Upon information and belief, ViaSat and LiveTV have entered into contracts or agreements to provide Mobile Broadband Services to passengers aboard aircraft owned and/or operated by airlines such as JetBlue, as well as non-commercial aircraft operators. Additionally, upon information and belief, ViaSat and LiveTV have entered into contracts or agreements with airlines, including JetBlue, to

sell and install the Mobile Broadband Equipment on aircraft owned and/or operated by the airlines, such as JetBlue, as well as non-commercial aircraft operators.

68.     Upon information and belief, ViaSat and LiveTV, without authority, supply or cause to be supplied in or from the United States, all or a substantial portion of the components of a patented invention of the Patents-in-Suit, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the Patents-in-Suit if such combination occurred within the United States. Upon information and belief, ViaSat and LiveTV, without authority, supply or cause to be supplied in or from the United States, any component of a patented invention of the Patents-in-Suit that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial non-infringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the Patents-in-Suit if such combination occurred within the United States.

69.     Specifically, upon information and belief, ViaSat and LiveTV, without authority, supply or cause to be supplied in or from the United States, the components of the Mobile Broadband Equipment to airlines outside of the United States ("Additional Airlines"). Such components (e.g., the antenna(e), CWAP(s), and server(s) of the Mobile Broadband Equipment) are uncombined in whole or in part upon receipt by the Additional Airlines outside of the United States and, as discussed, are especially made or especially adapted for use in the invention of the Patents-in-Suit and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

70.     Upon information and belief, the Mobile Broadband Equipment assembled outside of the United States by the Additional Airlines are utilized and provide Wi-Fi access within the United States and elsewhere for those flights of the

Additional Airlines equipped with the Mobile Broadband Equipment. Upon information and belief, the Additional Airlines, under ViaSat and/or LiveTV's direction and control, have assembled or caused to be assembled said components to implement the functioning Mobile Broadband Equipment and to provide Mobile Broadband Services as outlined supra.

71.   Furthermore, ViaSat and LiveTV actively induce the combination of such components outside of the United States by the Additional Airlines in a manner that would infringe the Patents-in-Suit if such combination occurred within the United States.

72.   Upon information and belief, ViaSat and LiveTV have and continue to supply material components that infringe the Patent-in-Suit despite having actual knowledge that the Mobile Broadband Equipment and Mobile Broadband Services infringe the Patents-in-Suit as discussed infra.

73.   Upon information and belief, ViaSat and LiveTV have installed equipment on aircraft owned and operated by the airlines, including JetBlue and the Additional Airlines, and/or has had such equipment installed under its direction and control on the aircraft, which facilitates communication with the satellite communications network to provide Mobile Broadband Services to users.

74.   Upon information and belief, ViaSat and LiveTV provide guidance and instructions to airlines, including JetBlue and the Additional Airlines, for the installation and maintenance of equipment on aircraft owned and operated by the airlines, to utilize Mobile Broadband Services during flights.

75.   Upon information and belief, under at least the aforementioned agreements, ViaSat and LiveTV provide guidance and instructions explaining how passengers can obtain or utilize Mobile Broadband Services during flights offered by the airlines, including JetBlue and the Additional Airlines.

*The Defendants' Knowledge of the Patents-in-Suit*

76.   On August 15, 2012, AMN notified ViaSat CEO Mark D. Dankberg via

a letter from its counsel that products and services made, used, sold, or offered for sale by ViaSat infringed the '074 and '777 Patents including the Yonder Services and Yonder System. Upon information and belief, Mr. Dankberg received the August 15 letter.

77.    Upon information and belief, Defendants were already aware of the '074 and '777 Patents prior to receipt of the formal notice from AMN by virtue of, among other things, the prior litigation of such patents in its industry including against ViaSat's direct competitors including Inmarsat and Gogo and its potential customers, the commercial airlines.

78.    Since it became aware of the Patents-in-Suit at least as early as August 15, 2012, ViaSat has continued to make, use, sell and offer to sell Mobile Broadband Services and the Mobile Broadband Equipment to customers including JetBlue and the Additional Airlines, as well as customers in the maritime, rail, and vehicle transportation industries, thereby willfully infringing AMN's Patents-in-Suit.

79.    Since it became aware of the Patents-in-Suit, JetBlue has continued to make, use, sell and offer to sell Fly-Fi Equipment and Services to passengers, thereby willfully infringing AMN's Patents-in-Suit.

80.    Since it became aware of the Patents-in-Suit, LiveTV has continued to make, use, sell and offer to sell Connectivity Services to passengers, thereby willfully infringing AMN's Patents-in-Suit.

## COUNT I

*Infringement of United States Patent No. 5,960,074*

*(Against All Defendants)*

81.    AMN repeats the allegations contained in the preceding paragraphs 1 through 81 as though fully set forth herein.

82.    Upon information and belief, each Defendant has in the past infringed and continues to infringe the '074 Patent, directly and/or by contributory infringement and/or by inducement of infringement, by making, using, selling and/or

offering to sell, in this judicial district and elsewhere in the United States, Mobile Broadband Services and the Mobile Broadband Equipment, which embody the patented invention of the '074 Patent.

83.   Pursuant to 35 U.S.C. § 271, ViaSat is liable for direct infringement of the '074 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Mobile Broadband Services and the Mobile Broadband Equipment. ViaSat's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Mobile Broadband Services offered through the satellite communications network and the Mobile Broadband Equipment, which embody the patented invention of the '074 Patent. ViaSat has contracted to sell and has sold both Mobile Broadband Services and the Mobile Broadband Equipment (in configurations generally similar to the allegations previously made) to various customers including JetBlue, LiveTV, and the Additional Airlines. ViaSat continued to make, use, sell, offer to sell, and/or import Mobile Broadband Services and Mobile Broadband Equipment despite having actual knowledge of the infringement of the '074 Patent communicated by AMN as discussed supra.

84.   Pursuant to 35 U.S.C. § 271, ViaSat is liable for contributory infringement of the '074 Patent by having sold or offered to sell and continuing to sell or offer to sell Mobile Broadband Services and the components of the Mobile Broadband Equipment which comprise a material component of the invention embodied in the '074 Patent, which is especially made or adapted for use in infringing the '074 Patent and which is not suitable for any substantial non-infringing use, in order to provide Mobile Broadband Services to users and having knowledge that the '074 Patent was/is being directly infringed by users.

85.   Pursuant to 35 U.S.C. § 271, ViaSat is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '074 Patent by users of Mobile Broadband Services and the Mobile Broadband Equipment.

86.     Pursuant to 35 U.S.C. § 271, ViaSat is liable for infringement of the '074 Patent by knowingly supplying customers, including airlines, outside of the United States with components of the Mobile Broadband Equipment, the components having no other substantial non-infringing use and not being staple articles or commodities of commerce. Further, the combination of components supplied by ViaSat to foreign entities would infringe the patent if such combination occurred within the United States.

87.     Pursuant to 35 U.S.C. § 271, LiveTV is liable for direct infringement of the '074 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell In-Flight Entertainment and Connectivity products and services. LiveTV's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of In-Flight Entertainment and Connectivity services offered through the ViaSat satellite communications network and the In-Flight Entertainment and Connectivity hardware installed on commercial, private, and government aircraft, which embody the patented invention of the '074 Patent. LiveTV has contracted to sell and has sold both In-Flight Entertainment and Connectivity products and services to various airlines including JetBlue. LiveTV continued to make, use, sell, offer to sell, and/or import In-Flight Entertainment and Connectivity products and services despite having actual knowledge of the infringement of the '074 Patent communicated by AMN as discussed supra.

88.     Pursuant to 35 U.S.C. § 271, LiveTV is liable for contributory infringement of the '074 Patent by having sold or offered to sell and continuing to sell or offer to sell components of the In-Flight Entertainment and Connectivity products and services which comprise a material component of the invention embodied in the '074 Patent, which is especially made or adapted for use in infringing the '074 Patent and which is not suitable for any substantial non-infringing use, in order to provide In-Flight Entertainment and Connectivity services to users in-flight and having knowledge that the '074 Patent was/is being directly

infringed by users in-flight.

89.     Pursuant to 35 U.S.C. § 271, LiveTV is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '074 Patent by users of In-Flight Entertainment and Connectivity products and services.

90.     Pursuant to 35 U.S.C. § 271, LiveTV is liable for infringement of the '074 Patent by knowingly supplying airlines outside of the United States with components of the In-Flight Entertainment and Connectivity products and services, the components having no other substantial non-infringing use and not being staple articles or commodities of commerce. Further, the combination of components supplied by LiveTV to foreign entities would infringe the '074 Patent if such combination occurred within the United States.

91.     Pursuant to 35 U.S.C. § 271, JetBlue is liable for direct infringement of the '074 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Fly-Fi Services. JetBlue's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Fly-Fi Services offered through the satellite communications network and the Fly-Fi Equipment installed on multiple JetBlue aircraft, which embody the patented invention of the '074 Patent. JetBlue has and continues to utilize both the components of the Fly-Fi Equipment and Fly-Fi Services provided by ViaSat to provide broadband access aboard JetBlue's aircraft. Additionally, JetBlue has, and continues to sell, broadband access to JetBlue's customers who directly infringe the '074 Patent by using Fly-Fi Services.

92.     Pursuant to 35 U.S.C. § 271, JetBlue is liable for contributory infringement of the '074 Patent by having sold or offered to sell and continuing to sell or offer to sell Fly-Fi Services and the components of the Fly-Fi Equipment which comprise a material component of the invention embodied in the '074 Patent, which is especially made or adapted for use in infringing the '074 Patent and which

is not suitable for any substantial non-infringing use, in order to provide Fly-Fi Services to users in-flight and having knowledge that the '074 Patent was/is being directly infringed by users in-flight.

93. Pursuant to 35 U.S.C. § 271, JetBlue is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '074 Patent by users of Fly-Fi Services and the Fly-Fi Equipment in-flight.

94. Upon information and belief, Defendants' infringement of the '074 Patent is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '074 Patent and thus acting in reckless disregard of AMN's patent rights.

95. As a result of Defendants' acts of infringement of the '074 Patent, AMN has suffered injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

96. Unless an injunction is issued enjoining Defendants and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '074 Patent, AMN will be irreparably harmed.

## COUNT II

*Infringement of United States Patent No. 6,445,777*

*(Against All Defendants)*

97. AMN repeats the allegations contained the preceding paragraphs 1 through 97 as though fully set forth herein.

98. Upon information and belief, each Defendant has in the past infringed and continues to infringe the '777 Patent, directly and/or by contributory infringement and/or by inducement of infringement, by making, using, selling and/or offering to sell, in this judicial district and elsewhere in the United States, Mobile Broadband Services and the Mobile Broadband Equipment, which embody the

patented invention of the '777 Patent.

99.    Pursuant to 35 U.S.C. § 271, ViaSat is liable for direct infringement of the '777 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Mobile Broadband Services and the Mobile Broadband Equipment. ViaSat's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Mobile Broadband Services offered through the satellite communications network and the Mobile Broadband Equipment installed on vehicles, which embody the patented invention of the '777 Patent. ViaSat has contracted to sell and has sold both Mobile Broadband Services and the Mobile Broadband Equipment (in configurations generally similar to the allegations previously made) to various customers including JetBlue and the Additional Airlines. ViaSat continued to make, use, sell, offer to sell, and/or import Mobile Broadband Services and Mobile Broadband Equipment despite having actual knowledge of the infringement of the '777 Patent communicated by AMN as discussed *supra*.

100.   Pursuant to 35 U.S.C. § 271, ViaSat is liable for contributory infringement of the '777 Patent by having sold or offered to sell and continuing to sell or offer to sell Mobile Broadband Services and the components of the Mobile Broadband Equipment which comprise a material component of the invention embodied in the '777 Patent, which is especially made or adapted for use in infringing the '777 Patent and which is not suitable for any substantial non-infringing use, in order to provide Mobile Broadband Services to users and having knowledge that the '777 Patent was/is being directly infringed by users.

101.   Pursuant to 35 U.S.C. § 271, ViaSat is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '777 Patent by users of Mobile Broadband Services and the Mobile Broadband Equipment.

102.   Pursuant to 35 U.S.C. § 271, ViaSat is liable for infringement of the '777 Patent by knowingly supplying customers, including, but not limited to, airlines,

mass transportation operators, commercial and private maritime operators and motor vehicles outside of the United States with components of the Mobile Broadband Equipment, the components having no other substantial non-infringing use and not being staple articles or commodities of commerce. Further, the combination of components supplied by ViaSat to foreign entities would infringe the '777 Patent if such combination occurred within the United States.

103.   Pursuant to 35 U.S.C. § 271, LiveTV is liable for direct infringement of the '777 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell In-Flight Entertainment and Connectivity products and services. LiveTV's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of In-Flight Entertainment and Connectivity services offered through the ViaSat satellite communications network and the In-Flight Entertainment and Connectivity hardware installed on aircraft, which embody the patented invention of the '777 Patent. LiveTV has contracted to sell and has sold both In-Flight Entertainment and Connectivity products and services to various airlines including JetBlue and United Airlines. LiveTV continued to make, use, sell, offer to sell, and/or import In-Flight Entertainment and Connectivity products and services despite having actual knowledge of the infringement of the '777 Patent communicated by AMN as discussed supra.

104.   Pursuant to 35 U.S.C. § 271, LiveTV is liable for contributory infringement of the '777 Patent by having sold or offered to sell and continuing to sell or offer to sell components of the In-Flight Entertainment and Connectivity products and services which comprise a material component of the invention embodied in the '777 Patent, which is especially made or adapted for use in infringing the '777 Patent and which is not suitable for any substantial non-infringing use, in order to provide In-Flight Entertainment and Connectivity services to users in-flight and having knowledge that the '777 Patent was/is being directly infringed by users in-flight.

105. Pursuant to 35 U.S.C. § 271, LiveTV is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '777 Patent by users of In-Flight Entertainment and Connectivity products and services.

106. Pursuant to 35 U.S.C. § 271, LiveTV is liable for infringement of the '777 Patent by knowingly supplying airlines outside of the United States with components of the In-Flight Entertainment and Connectivity products and services, the components having no other substantial non-infringing use and not being staple articles or commodities of commerce. Further, the combination of components supplied by LiveTV to foreign entities would infringe the patent if such combination occurred within the United States.

107. Pursuant to 35 U.S.C. § 271, JetBlue is liable for direct infringement of the '777 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Fly-Fi Services. JetBlue's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Fly-Fi Services offered through the satellite communications network and the Fly-Fi Equipment installed on multiple JetBlue aircraft, which embody the patented invention of the '777 Patent. JetBlue has and continues to utilize both the components of the Fly-Fi Equipment and Fly-Fi Services provided by ViaSat to provide broadband access aboard JetBlue's aircraft. Additionally, JetBlue has, and continues to sell, broadband access to JetBlue's customers who directly infringe the '777 Patent by using Fly-Fi Services.

108. Pursuant to 35 U.S.C. § 271, JetBlue is liable for contributory infringement of the '777 Patent by having sold or offered to sell and continuing to sell or offer to sell Fly-Fi Services and the components of the Fly-Fi Equipment which comprise a material component of the invention embodied in the '777 Patent, which is especially made or adapted for use in infringing the '777 Patent and which is not suitable for any substantial non-infringing use, in order to provide Fly-Fi

Services to users in-flight and having knowledge that the '777 Patent was/is being directly infringed by users in-flight.

109.   Pursuant to 35 U.S.C. § 271, JetBlue is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '777 Patent by users of Fly-Fi Services and the Fly-Fi Equipment in-flight.

110.   Upon information and belief, Defendants' infringement of the '777 Patent is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '777 Patent and thus acting in reckless disregard of AMN's patent rights.

111.   As a result of Defendants' acts of infringement of the '777 Patent, AMN has suffered injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

112.   Unless an injunction is issued enjoining Defendants and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '777 Patent, AMN will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, AMN prays for judgment and relief as follows:

A.   A declaration that Defendants have infringed, are infringing, have induced and are inducing, have contributed and are contributing to the infringement of the '074 and '777 Patents;

B.   A permanent injunction enjoining Defendants, their officers, agents, servants, employees, affiliates and attorneys, and all those in active concert or participation with them, from further infringing, inducing infringement, and contributing to the infringement of the '074 and '777 Patents;

C.   An award of damages adequate to compensate AMN for the infringement of the '074 and '777 Patents by Defendants;

D.      A declaration that Defendants' continuing infringement of the '074 and '777 Patents was and is willful, justifying a trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

E.      An award of pre-judgment and post-judgment interest on the damages caused by reason of Defendants' infringement of the '074 and '777 Patents;

F.      A declaration that this an exceptional case and that AMN be granted its reasonable attorneys' fees in accordance with 35 U.S.C. § 285;

G.      An award of costs to AMN; and

H.      A grant to AMN of such other and further relief as the Court may deem just and proper.

DATED: January 21, 2015                    PROCOPIO, CORY, HARGREAVES &
                                           SAVITCH LLP


                                           By:  s/S. Todd Neal
                                                S. Todd Neal
                                                todd.neal@procopio.com
                                                PROCOPIO, CORY, HARGREAVES
                                                & SAVITCH LLP
                                                525 B Street, Suite 2200
                                                San Diego, CA 92101
                                                Telephone: (619) 525-3890
                                                Facsimile: (619) 398-0190

                                                *Attorney for Plaintiff*
                                                *Advanced Media Networks, LLC*

Of Counsel:

Seth H. Ostrow
sho@msf-law.com
Jeffrey P. Weingart

jpw@msf-law.com
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536

COMPLAINT

## DEMAND FOR JURY TRIAL

AMN demands trial by jury on all claims and issues so triable.

DATED: January 21, 2015

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: s/S. Todd Neal
_____
S. Todd Neal
todd.neal@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: (619) 525-3890
Facsimile: (619) 398-0190

*Attorney for Plaintiff*
*Advanced Media Networks, LLC*

Of Counsel:

Seth H. Ostrow
sho@msf-law.com
Jeffrey P. Weingart
jpw@msf-law.com
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536

COMPLAINT